IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA, )
 )
    Plaintiff, )
 )
v. )
 )   No. 09-20175 Ma/P
RICHARD SIR, )
a/k/a RICHARD NELSON, )
 )
    Defendant. )

---

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

---

Before the court by order of reference is defendant Richard Sir's Motion to Suppress, filed August 17, 2009. (D.E. 20.) The United States ("government") filed a response in opposition on August 26, 2009. On October 29, 2009, the court held a suppression hearing on the motion.[1] Present were Assistant U.S. Attorney Kirby May, defendant Sir, and his counsel, Larry M. Sargent. At the hearing, the court heard testimony from Memphis Police Department Officers Anthony Morris and Lenayan Holmes, and from the fiancee of Sir's brother, Chokese Parker.[2] The court also admitted into evidence four exhibits.

---

[1] The suppression hearing was originally scheduled for September 9, 2009. The hearing was continued to October 29, because Sir retained new counsel who requested additional time to prepare for the hearing.

[2] The transcript of the hearing was submitted to the court on December 10, 2009.

Based upon the briefs filed in support of and in opposition to the motion, the evidence presented at the hearing, and the entire record, the court submits the following proposed findings of fact and conclusions of law, and recommends that the Motion to Suppress be denied.

## I.  PROPOSED FINDINGS OF FACT

As an initial matter, the court finds the testimony of the government's witnesses to be credible and therefore accepts as fact the officers' version of events.  The court also finds credible the testimony of Chokese Parker, who testified that she gave the officers consent to search her vehicle.

On January 16, 2009, at approximately 11:50 a.m., Janet Cathey called 911 emergency from her residence at 1009 Rozelle Street, in Memphis, Tennessee.  Cathey reported that her boyfriend, defendant Richard Sir, had made threatening phone calls to her and had firearms in his possession, including handguns and possibly an AK-47 assault rifle.[3]  She reported that Sir apparently believed that she had cheated on him, and that Sir stated he was returning to her house to kill her.

Memphis Police Department ("MPD") Officers Anthony Morris and

---

[3]At the hearing, counsel for the defendant stated that the defendant's name is actually Sir Richard, not Richard Sir.  The witnesses also referred to the defendant in their testimony as Sir Richard.  For purposes of this report and recommendation, the court will refer to the defendant as Richard Sir, which is how his name currently appears on the indictment.

Lenayan Holmes responded to this "armed party" call, and based upon the information received, Officer Morris brought an assault rifle with him and called for additional support from officers in the area who were similarly armed with assault rifles.  Within five minutes, Officers Morris and Holmes arrived at Cathey's house.  The officers met Cathey outside the residence and observed that she was "hysterical," "scared," "shaking extremely bad," and "uncontrollable" while she talked with them.  Cathey told the officers that she had just left the gym when she received a call from a family member informing her that Sir was removing items from her house.  Cathey informed the officers she was Sir's girlfriend and that they had been together for the past two years.  She told the officers that Sir was armed with guns that he had taken from her house, including possibly an AK-47 assault rifle, and that Sir told her he was returning to the house to kill her.  She then offered to show the officers where Sir kept his weapons in the house.  Cathey took Officer Morris to one of the rooms at the front of the house, and underneath a heat vent, she pulled out one loaded magazine and one unloaded magazine for an assault rifle.

After the officers checked the residence to make sure no one else was in the house, they returned to their vehicle, which was parked on the street corner across from the house.  Officer Morris, using his portable MPD palmtop computer, pulled up a digital image of Sir's driver's license photograph and showed it to Cathey.  She

confirmed that the photograph was of Sir.[4]

Cathey then told the officers that she had just received another call from Sir, and that he again said he was coming to her house to kill her.   The officers told Cathey to go inside the house, as they waited in their patrol car for Sir to arrive. Shortly thereafter, Officer Morris saw a gray, four-door Corolla approach Cathey's residence.   As the car drove in front of the house, Officer Morris saw Cathey walk outside to the front of the house, point to the car, and yell, "There he is!"  At that moment, the Corolla drove past the house and turned south on Rozelle.   As the car turned onto Rozelle, it passed right by the officers' patrol car at the intersection.   The car had dark window tint on the four side windows and rear windshield; however, the front windshield did not have any tint.   Officer Morris could see Sir, who was driving the vehicle, through the front windshield and made eye contact with him.   Officer Morris was able to identify Sir from his driver's license photograph.

After the Corolla passed by the officers, they engaged their blue lights, made a U-turn at the intersection, and pursued the vehicle southbound to the intersection of Rozelle and Southern

---

[4]Officer Holmes testified that, at some point, Cathey told him that Sir was a convicted felon and that he later confirmed that information with the police dispatcher.   It is unclear from his testimony exactly when Cathey provided this information and whether he confirmed the information before or after Sir was taken into custody.  Officer Morris did not mention receiving information from Cathey about Sir's felony status during his testimony.

Avenue.  By the time the officers pulled up behind the Corolla, Sir
had already stopped and exited the vehicle.  The officers saw Sir
open the rear door on the driver's side and reach inside the back
of the car.  Believing that Sir was reaching for a gun in the back
seat, the officers drew their weapons and ordered Sir to the
ground.  Sir closed the car door and laid down on the ground, at
which time he was handcuffed and placed in the back of the patrol
car.  While Sir was seated in the patrol car, he made several
spontaneous statements, including stating that the vehicle belonged
to his brother's fiancee, that there were pistols and a shotgun in
the back of the car, and that the firearms were his.  Although Sir
had not been advised of his <u>Miranda</u> rights, his statements were not
made in response to any police questioning.

        After Sir was secured in the patrol car, Officers Morris and
Holmes, as well as backup officers who had since made the scene,
returned to the Corolla.  Officers Morris and Holmes looked through
the rear driver's and passenger's side windows.[5]  They could see
clothes scattered on the back seat and floor area, and protruding
from underneath the clothes they saw what appeared to be the butt
of a pistol and a shotgun on the floor.  The officers were not able
to open the doors because Sir had locked the doors and had thrown

---

[5]The officers testified that they did not recall whether the
Corolla's side windows and rear windshield were tinted.  Although
it is clear from the evidence that the side windows and rear
windshield were, in fact, tinted, this fact does not undermine the
credibility of the officers.

the keys inside the vehicle before surrendering to the officers.

The officers were able to determine from a check of the Corolla's license plate that Chokese Parker was the registered owner of the vehicle.[6]  The officers contacted Parker, and within approximately fifteen minutes, she arrived at the scene.  The officers told Parker that they saw guns in the rear of the car and asked Parker to look through the windows of the vehicle.  Parker looked through the rear side window, and as one of the officers shined a flashlight through the window, she could see the butt of a pistol protruding from underneath some clothes.  She then gave the officers consent to search her vehicle and signed a consent form.  After unlocking the Corolla, the officers recovered two loaded handguns and a loaded shotgun from the back seat area.

Sir was later indicted on three counts of being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g).  He now moves to suppress the evidence seized from the Corolla and his post-arrest statement.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Vehicle Stop and Arrest

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.

---

[6]Parker testified that Sir had borrowed her car the night before because he needed transportation to work.

"In the absence of probable cause, an arrest constitutes an unreasonable seizure in violation of the Fourth Amendment." <u>United States v. Torres-Ramos</u>, 536 F.3d 542, 554 (6th Cir. 2008); <u>see also</u> <u>Herring v. United States</u>, 129 S. Ct. 695, 698 (2009). "Probable cause requires officers to 'show more than mere suspicion' but 'does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence to establish guilt beyond a reasonable doubt.'" <u>United States v.</u> <u>Evans</u>, 581 F.3d 333, 342 (6th Cir. 2009) (quoting <u>United States v.</u> <u>Strickland</u>, 144 F.3d 412, 416 (6th Cir. 1998)). "Probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." <u>United States v. Lopez</u>, No. 2:08-CR-94, 2009 WL 982777, at *2 (E.D. Tenn. Apr. 13, 2009) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1976)).

In order to determine if an officer had probable cause to arrest a defendant, the court must determine "whether, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either committed or was committing an offense." <u>Torres-Ramos</u>, 536 F.3d at 555 (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)) (internal quotation marks omitted). In making its probable cause determination, the court must look to the totality

of the circumstances.  <u>Gates</u>, 462 U.S. at 230-31.

In this case, the officers had probable cause to believe that Sir had committed the crime of domestic assault.  Tennessee Code Annotated § 39-13-111 provides that "[a] person commits domestic assault who commits an assault as defined in § 39-13-101 against a domestic abuse victim."  T.C.A. § 39-13-111(b).  Section 39-13-101, in turn, provides that "[a] person commits assault who . . . (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury . . . ."  T.C.A. § 39-13-101(a)(2).  A "domestic abuse victim" includes, among others, "[a]dults or minors who are dating or who have dated . . . ."  T.C.A. § 39-13-111(a)(3).  In Tennessee, "[i]f a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or felony, or was committed within or without the presence of the officer, the preferred response of the officer is arrest."  T.C.A. § 36-3-619(a); <u>see also</u> <u>United States v. Sain</u>, No. 09-10020, 2009 WL 3255216, at *3 (W.D. Tenn. Oct. 7, 2009).

The officers were advised by Cathey that she was Sir's girlfriend and that they had been together for the past two years. The officers observed that she was "hysterical," "scared," "shaking extremely bad," and "uncontrollable" while she talked with them. Cathey told the officers that Sir had guns with him, including possibly an AK-47 assault rifle, she showed them the assault rifle

magazines, and she informed them that Sir told her that he was returning to the house to kill her. When Sir's car drove by Cathey's house, she pointed to the car and yelled, "There he is!" As the Corolla passed by the officers' patrol car, Officer Morris was able positively identify Sir as the driver. Sir then attempted to leave the scene, and when the officers caught up with him, he went to the back seat as if to possibly reach for a weapon. Under these circumstances, the officers had probable cause to believe that Cathey was a domestic abuse victim and that Sir's actions caused her to reasonably fear imminent bodily injury. Thus, they had the requisite probable cause to stop the vehicle and arrest Sir for domestic assault.

**B.    Search of the Vehicle**

The court next addresses whether the warrantless search of Sir's vehicle violated the Fourth Amendment.    "[O]ur analysis begins . . . with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009); United States v. Radka, 904 F.2d 357, 360 (6th Cir. 1990) (stating that "[w]arrantless searches are *per se* unreasonable under the fourth amendment, except in a few carefully delineated instances"). "Those exceptions include automobile searches, consented-to

searches, searches incident to arrest, seizures of items in plain view, Terry stops, the hot-pursuit rule, and searches in order to prevent the loss or destruction of evidence." Reynolds v. City of Anchorage, 379 F.3d 358, 370 (6th Cir. 2004).

There are two exceptions to the warrant requirement that apply to the search of Sir's vehicle. First, "[p]olice may search a vehicle incident to a recent occupant's arrest only if . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 129 S. Ct. at 1723; see also United States v. Allen, No. 4:08-cr-40, 2009 WL 3297286, at *2 (E.D. Tenn. Oct. 13, 2009) (applying Gant). As discussed above, the officers had probable cause to arrest Sir for domestic assault, and once the officers looked through the rear windows of the Corolla and saw the butt of a pistol and a shotgun in "plain view," they were justified in conducting a warrantless search of the vehicle. See United States v. Jenkins, 124 F.3d 768, 774 (6th Cir. 1997) (citing Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Calloway, 116 F.3d 1129, 1133 (6th Cir. 1997); United States v. Roark, 36 F.3d 14, 18 (6th Cir. 1994)); see also United States v. Dunn, 480 U.S. 294, 305 (1987) ("[I]t is 'beyond dispute' that the action of a police officer in shining his flashlight to illuminate the interior of a car, without probable cause to search the car, 'trenched upon no right secured . . . by the Fourth Amendment.'") (quoting Texas v. Brown, 460 U.S. 730, 739-40 (1983)).

-10-

At the hearing, Sir made much of the fact that the side windows and rear windshield had a dark tint, suggesting that perhaps the officers could not see the guns through the rear windows and therefore had no basis to search the vehicle. This argument is not supported by the evidence, as all three witnesses testified that they could at least see the butt of the pistol through the windows. However, even assuming, *arguendo*, that the officers could not see the guns through the tinted windows, they were nevertheless permitted to search the Corolla for firearms under the "automobile exception" based upon the information they had before they even attempted to look through the windows. Specifically, the officers had information that Sir had taken guns from Cathey's house, that he may have been armed with an AK-47, that assault rifle magazines that belonged to Sir were retrieved from the house, and that he had threatened to kill Cathey. Based upon these facts alone, the officers were authorized to conduct a warrantless search of the vehicle after arresting Sir.

Second, the officers obtained consent to search from the vehicle's owner, which provided them with an independent basis to search the vehicle even if they had not seen the guns through the windows. "If an officer obtains consent to search, a warrantless search does not offend the Constitution." United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008) (citing Davis v. United States, 328 U.S. 582, 593-94 (1946)). "An officer with consent needs

neither a warrant nor probable cause to conduct a constitutional search." United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). "[A] search is not unreasonable if an individual with a privacy interest in the item to be searched gives voluntary consent." United States v. McCauley, 548 F.3d 440, 446 (6th Cir. 2008) (citing Bustamonte, 412 U.S. at 219). "Valid consent may be provided not only by the defendant but also by 'a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" Id. (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). Parker, as the registered owner of the vehicle, had the authority to give the officers consent to search her vehicle, and as clearly demonstrated by her own testimony as well as the testimony of the officers, her consent was knowingly and voluntarily given. Moon, 513 F.3d at 537 (citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968)); see also United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977). Therefore, the officers did not violate Sir's Fourth Amendment rights by searching the Corolla.

**C.   Post-Arrest Statements**

Finally, Sir argues that the statements he made about the guns after he was arrested and placed in the back of the patrol car should be suppressed because he was not advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436 (1966), requires that a

-12-

defendant be advised of certain rights, including the right to remain silent, prior to custodial interrogation. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Oregon v. Mathiason</u>, 429 U.S. 492, 494 (1977). Interrogation includes express questioning and "actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the subject." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).

Here, although Sir was in custody at the time he made the statements, the uncontradicted evidence shows that the statements were made spontaneously and not in response to any police interrogation. "'Volunteered statements of any kind are not barred by the Fifth Amendment . . . .'" <u>Id.</u> at 300 (quoting <u>Miranda</u>, 384 U.S. at 478); <u>see also</u> <u>United States v. Ortkiese</u>, 208 F. App'x 436, 440 (6th Cir. 2006); <u>United States v. Jones</u>, 128 F. App'x 490, 494 (6th Cir. 2005); <u>United States v. Cole</u>, 315 F.3d 633, 636 (6th Cir. 2003); <u>United States v. Murphy</u>, 107 F.3d 1199, 1205 (6th Cir. 1997). Because Sir's post-arrest statements were not made in violation of <u>Miranda</u>, the statements are admissible.

### III.  RECOMMENDATION

For the reasons above, it is recommended that the Motion to Suppress be denied.

-13-

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

December 22, 2009
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).   FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**